UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
CENTRAL DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 7 |
|  | ) | Case No. 14-40478-CJP |
| JOHN E. HOOVER | ) |  |
|  | ) |  |
| Debtor | ) |  |
|  | ) |  |

MEMORANDUM OF DECISION

The matters before the Court are (i) the Motion to Compromise Claim (Doc. No. 312) (the "Settlement Motion") filed by the Chapter 7 Trustee in the above-captioned case, Jonathan R. Goldsmith (the "Trustee"), by which he seeks to settle a prepetition personal injury claim of the debtor, John E. Hoover (the "Debtor"), resulting from a motor vehicle accident (the "Claim") for the benefit of the estate and (ii) the Motion to Amend Certain Schedules (Doc. No. 317) (the "Amendment Motion," collectively with the Settlement Motion, the "Motions") filed by the Debtor some twenty-two months post-petition and after the Trustee had sought approval to settle the Claim, by which he seeks to amend Schedule A/B to increase the $0.00 value he originally attributed to the Claim to $100,000.00 and amend Schedule C to change his exemption in the Claim from $0.00 under a state law exemption to a total of $34,190.00 under federal exemptions. The Debtor objected to the reasonableness of the proposed settlement, questioning the adequacy of the settlement amount (Doc. No. 313) (the "Settlement Objection"), and the Trustee objected

1

to the Amendment Motion (Doc. No. 331) (the "Amendment Objection"), asserting that the Debtor's conduct regarding the Claim and its exemption was fraudulent given his initial undervaluation of the Claim.[1]

As the Trustee has stated that he will not proceed with the Settlement Motion if his Amendment Objection is overruled, resolution of the Motions requires the Court to determine the Amendment Motion first.[2] With respect to that motion, the Court must examine whether the door seemingly shut on its authority to deny the amendment of an exemption claim based on a debtor's bad faith after *Law v. Siegel*, —U.S.—, 134 S. Ct. 1188, 1196 (2014), is reopened by the application of Rule 4003(b)(2) of the Federal Rules of Bankruptcy Procedure (the "Rules"). For the reasons discussed below, upon consideration of the Motions, the oppositions thereto, the supplemental briefing submitted by the parties at the direction of the Court, the argument of counsel at the hearing on the Motions, and the record of this entire case, the Court concludes that Rule 4003(b)(2) does not provide an independent basis for objecting to the amendment of an exemption under the circumstances of this case. Constrained by *Siegel*, the Court overrules the

---

[1] Unless otherwise specified, all section references herein are to Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.*, as amended (the "Bankruptcy Code").

[2] The Trustee submitted on the record at the hearing on the Motions that if the Court overrules his objection and allows the Debtor to amend his claims of exemption he would no longer seek approval of the proposed settlement because there would be a diminished benefit to the estate at that juncture. The Trustee also reserved his right to ultimately object to the amended schedules if his objection to the motion was overruled and to seek Rule 9011 sanctions in connection with the representations made by the Debtor in his schedules as originally filed and in the Amendment Motion. *See Amendment Obj.* 4 n.2; *see also* Fed. R. Bank. P. 4003(b)(1) ("[A] party in interest may file an objection to the list of property claimed as exempt only within 30 days after the meeting of creditors held under § 341(a) is concluded or within 30 days after any amendment to the list or supplemental schedules is filed, whichever is later.")

2

Trustee's Amendment Objection, grants the Amendment Motion, and denies the Settlement Motion without prejudice.

I.      JURISDICTION

This Court has jurisdiction over this core proceeding pursuant to 28 U.S.C. §§ 1334(b) and 157(b)(2)(A) and (B) and Local Rule 201 of the United States District Court for the District of Massachusetts.

II.      BACKGROUND AND POSITIONS OF THE PARTIES

The Debtor commenced a Chapter 11 proceeding on March 15, 2014 (the "Petition Date") and filed his Schedules of Assets and Liabilities, Statement of Financial Affairs and other required documents on March 31, 2014. On Schedule B as originally filed, the Debtor disclosed his interest in the Claim, which he described as a "[p]ersonal injury claim" and valued at $0.00. On Schedule C, the Debtor asserted an exemption in the Claim pursuant to Mass. Gen. L. c. 235, § 34, Seventeenth, in the amount of $0.00. On July 31, 2014, the Court granted a conversion motion filed by the United States Trustee, and the Trustee was subsequently appointed.

Prior to filing his Petition, the Debtor had retained Attorney Robert F. Casey, Jr. ("Attorney Casey") to pursue the Claim, which arose from a motor vehicle accident involving the Debtor and a third party on or about February 12, 2012. On December 5, 2014, the Trustee filed an application to employ Attorney Casey as special counsel, which the Court (Hoffman, CJ) approved on January 15, 2015, over the Debtor's objection. On February 5, 2015, Attorney Casey filed a complaint in Worcester Superior Court on behalf of the Trustee commencing a motor vehicle tort civil action regarding the Claim (the "State Court Action").

3

The Trustee filed the Settlement Motion seeking approval of a compromise of the Claim, pursuant to which the estate would receive a proposed payment of $15,500.00 (the "Settlement Amount") from the insurer of the defendant in the State Court Action in exchange for a general release by the estate. The Trustee has represented that the Debtor's health insurer will reduce its lien against the Settlement Amount to $4,400.00 and that Attorney Casey voluntarily reduced his legal fees to $4,014.67, which along with his expenses of $1,518.66, would also be paid from the Settlement Amount.

The Debtor objected to the Settlement Motion, arguing primarily that the severity of his injuries and the available insurance policy limit suggested to him that the Settlement Amount is below the low end of reasonableness, precluding its approval. The Debtor also contends that he was never contacted regarding the case and his injuries.

The Trustee argued that the terms of the settlement are fair and reasonable, taking into consideration the amount of a likely verdict, the severity of Debtor's claimed injury where he refused medical evacuation at the scene, a Personal Injury Protection offset of $2,000.00 that would need to be paid, and the insurer's rejection of mediation. The Trustee also noted that the Debtor's lack of cooperation was also taken into account as Attorney Casey had sought, but failed, to obtain a medical release from the Debtor after he had filed the State Court Action. *See Amendment Obj.*, Ex. D, *Attorney Casey Correspondence to Debtor dated April 28, 2015*.

After the Trustee filed his Settlement Motion and almost two years after the Petition Date, the Debtor moved to amend his schedules to increase the value of the Claim from $0.00 to $100,000.00, the policy limit of the State Court Defendant's insurance, to switch from state to federal exemptions, and to assert an increased exemption amount totaling $34,190.00, comprised

4

of a claimed $22,975.00 exemption under § 522(d)(11)(D) and an additional $11,215.00 exemption under § 522(d)(5).³

The Debtor explained his revised assessment of the Claim's value, stating that he originally "listed an estimated value of $0.00 because his prior attorney, Robert Casey, had expressed pessimism about any recovery on the claim." *Amendment Mot.* ¶ 3. The Debtor further stated that "[g]iven that Mr. Casey's original assessment of the claim appears to have been incorrect, [he] now desires to amend Schedule B to reflect the value of the claim as being equal to what he believes is the tortfeasor's policy limit, and to amend Schedule C to claim the maximum exemption amount available." *Id*. ¶ 6.

Pursuant to his Amendment Objection, the Trustee denied the Debtor's allegations as to the purported communications the Debtor had with Attorney Casey regarding the value of the Claim prior to the Petition Date, attaching certain written communications delivered to the Debtor by Attorney Casey, wherein special counsel conveyed to the Debtor offers of $9,000.00 and $12,000.00, respectively, received in response from the insurer to the Debtor's initial demand for $100,000.00, the Defendant's policy limit. *See Amendment Obj.*, Ex. A, *Attorney Casey Correspondence to Insurer dated September 11, 2013*; Ex. B, *Attorney Casey E-mail Correspondence to Debtor dated January 17, 2014*; Ex. C, *Correspondence from Tracy Bernard, Attorney Casey's Paralegal, to Debtor dated March 20, 2014*. Despite these communications,

---

³ The Debtor's amended Schedule C also reflects that he has claimed the following additional exemptions under § 522(d)(5): GMC Sierra ($5,700.00); unregistered motor home ($1,000.00); camera ($50.00); cash on hand ($60.00); GFA Credit Union ($400.00); IC Federal Credit Union ($0.00); Silhouette LLC ($0.00); HCW Realty Trust ($0.00); "[p]otential claim or counterclaim against Bank of American (sic) and Select Portfolio" ($0.00); and "Inventory at Halloween Costume World" ($0.00). *See Am. Schedules* (Doc. No. 316) at 10-11.

5

the Debtor filed his schedules indicating the value of the Claim was $0.00. The Trustee argues that the Debtor's representation with respect to Attorney Casey's purported pessimism regarding the Claim in the Amendment Motion "is false, misleading, and constitutes an attempt by the Debtor to perpetrate fraud on the Court." *Amendment Obj.* 3. The Debtor asserted at the hearing on the Motions that there was a "misunderstanding" with respect to the correspondence and that the Settlement Amount was "not significantly better" than prepetition settlement offers.

The Debtor contends that *Siegel* is on point and holds that federal exemptions may be amended despite any contention of fraud or bad faith in connection with the amendment. In reply, the Trustee asserts that *Siegel* is not applicable because, in that case, the trustee sought to surcharge a valid exemption, but here the Trustee seeks to challenge the propriety of the Debtor claiming an exemption based on bad faith, relying on *In re Woolner*, No. 13–57269, 2014 WL 7184042 (Bankr. E.D. Mich. Dec. 15, 2014) and Rule 4003(b)(2). With respect to application of Rule 4003(b)(2), the Debtor disputes the rule is applicable in this proceeding because the Debtor's case is not closed.

III.    DISCUSSION

Rule 1009 provides that a "schedule . . . may be amended by the debtor as a matter of course at any time before the case is closed," Fed. R. Bankr. P. 1009(a), and the First Circuit has applied this right to the claims of exemption.[4] *See, e.g., Hannigan v. White (In re Hannigan)*,

---

[4] "An estate in bankruptcy consists of all the interests in property, legal and equitable, possessed by the debtor at the time of filing, as well as those interests recovered or recoverable through transfer and lien avoidance provisions." *Owen v. Owen*, 500 U.S. 305, 308 (1991). A debtor may claim that certain interests in property are exempt from the estate, thus excluding that interest for the benefit of the debtor unless a party in interest objects. *See, e.g., Schwab v. Reilly*, — U.S. —, 130 S. Ct. 2652, 2657 (2010). Exemptions in bankruptcy are governed by § 522. "Pursuant to [11 U.S.C.] § 522(b)(1), a Massachusetts debtor may exempt property from the bankruptcy estate under one of two alternative exemptions, electing

6

409 F.3d 480, 481 (1st Cir. 2005). Despite the broad language of Rule 1009, prior to *Siegel*, the First Circuit had recognized certain exceptions for bad faith amendments, *see, e.g., Malley v. Agin*, 693 F.3d 28, 30 (1st Cir. 2012) (affirming surcharge against exempt property as "appropriate and necessary" under § 105(a) to offset fraudulent concealment of non-exempt property); *In re Hannigan*, 409 F.3d at 481 (Chapter 7 debtor was not allowed to amend homestead exemption because debtor acted in bad faith by intentionally excluding a parcel of land to undervalue debtor's property). These exceptions appear to be no longer viable after the Supreme Court's *Siegel* decision. *See United States v. Ledee*, 772 F.3d 21, 29 n.10 (1st Cir. 2014) (concluding that *Siegel* appears to overrule *Malley* and *Hannigan* to the extent they limited exemptions based on bad-faith conduct, but finding that the Supreme Court's ruling did not restrict the bankruptcy court's discretion concerning amendments unrelated to exemptions).

In *Siegel*, the Supreme Court stated in dicta that a debtor is vested with the discretion to invoke an exemption and, once invoked, "the court may not refuse to honor the exemption absent a valid statutory basis for doing so." *Siegel*, 134 S. Ct. at 1196. The *Siegel* Court considered whether a bankruptcy court may require a debtor's exempt assets to be used to pay administrative expenses incurred as a direct result of the debtor's misconduct in misrepresenting a lien and the resulting equity available in property claimed as exempt. *See id.* at 1192-93. The

---

either the federal bankruptcy exemptions set forth in [11 U.S.C.] § 522(d) or the exemptions available under state, federal non-bankruptcy or local law." *In re Williams*, 515 B.R. 395, 399 (Bankr. D. Mass. 2014) (quotations omitted). Section 522(l) provides that exemptions listed on Schedule C are presumptively valid in the absence of an objection and Rule 4003(c) dictates the burden to prove that an exemption is not properly claimed is on the objecting party rather than the claiming party. As the objecting party, the Trustee carries the burden of demonstrating that Debtor's exemption was improperly claimed. *See* Fed. R. Bankr. P. 4003(c).

Court found this "surcharge" to be improper, holding that "federal law provides no authority for bankruptcy courts to deny an exemption on a ground not specified in the Code" and that § 105(a) does not empower bankruptcy courts to surcharge a debtor's allowed exemption for payment of administrative expenses, despite the debtor's fraudulent conduct in claiming the exemption, as doing so contravened § 522. *Id*. at 1195-96.

While the Court's specific holding was limited to the interpretation of § 522(k), its further comments on the authority of bankruptcy courts to use their § 105 powers to remedy debtor fraud has "affect[ed] a sea-change among lower courts facing this issue."[5] *Mateer v. Ostrander (In re Mateer)*, 525 B.R. 559, 565 (Bank. D. Mass. 2015) (holding that, while the Court "would have stood on solid ground [pre-*Siegel*] in denying" a claimed exemption based on

---

[5] *See, e.g., Ledee*, 772 F.3d at 29 n. 10 (recognizing that the Supreme Court held in *Siegel* that bankruptcy courts do not have "a general, equitable power . . . to deny exemptions based on a debtor's bad-faith conduct"); *Ellmann v. Baker (In re Baker)*, 791 F.3d 677, 682-84 (6th Cir. 2015) (concluding that courts cannot disallow exemption based on debtor's fraudulent concealment of the asset alleged to be exempt); *Gray v. Warfield (In re Gray)*, 523 B.R. 170, 175 (B.A.P. 9th Cir. 2014) (determining that *Siegel* mandates that there is no federal authority to disallow exemptions for bad faith; case remanded for determination of whether state law equitable considerations could apply); *Marchand v. Whittick (In re Whittick)*, 547 B.R. 628, 639 (Bankr. D.N.J. 2016) (applying *Siegel* and finding that the trustee "may only object to the Debtor's exemption on the basis that it is not validly taken, not that the court should deny amendment of the exemptions on equitable grounds"); *In re Franklin*, 506 B.R. 765, 771 (Bankr. C.D. Ill. 2014) (holding *Siegel* "disavowed the long-standing non-statutory basis for disallowing an exemption where a debtor fraudulently conceals an exempt asset, determining that courts do not have a general equitable power to deny exemptions based on a debtor's bad faith conduct"); *In re Mitchell*, No. 13–14494, 2014 WL 1725819, at *8 (Bankr. N.D. Ohio Apr. 30, 2014); *In re Gutierrez*, No. 12–60444–B–7, 2014 WL 2712503, at *6 (Bankr. E.D. Cal. June 12, 2014); *In re Arellano*, 517 B.R. 228, 229-32 (Bankr. S.D. Cal. 2014); *In re Scotchel*, No. 12–09, 2014 WL 4327947, at *4 (Bankr. N.D. W.Va. Aug. 28, 2014) (holding that after *Siegel* courts no longer have the discretion to deny amended exemptions based upon equitable considerations); *Neblett v. Gress (In re Gress)*, 517 B.R. 543, 548 (Bankr. M.D. Pa. 2014) (joining other bankruptcy courts in finding that under *Siegel*, equitable considerations cannot be used to disallow exemption that otherwise would be allowable under § 522 and overruling Trustee's objections to debtors' amended exemptions to the extent they are based upon debtors' bad faith); *but see Jacoway v. Svetc (In re Svetc)*, 521 B.R. 892, 907-08 (Bankr. W.D. Ark. 2014) (disallowing exemptions for fraud without addressing *Siegel*); *Woolner*, 2014 WL 7184042, at *2-4 (limiting *Siegel* to surcharge context and applying Fed. R. Bankr. P. 4003 to sustain objection to fraudulently claimed exemptions).

8

the debtor's attempt to conceal the existence of an insurance claim and cash payments received from his insurer and mortgage lender, the debtor was entitled to claim a Massachusetts homestead exemption, which included the insurance proceeds, despite his intentional and fraudulent conduct). The Supreme Court closely scrutinized § 522 and concluded that that section "sets forth a number of carefully calibrated exceptions and limitations, some of which relate to the debtor's misconduct" and that the section's "meticulous—not to say mind-numbingly detailed—enumeration of exemptions and exceptions to those exemptions confirms that courts are not authorized to create additional exceptions." *Siegel*, 134 S. Ct. at 1196. The Court conceded that while it is "true that when a debtor claims a *state-created* exemption, the exemption's scope is determined by state law, which may provide that certain types of debtor misconduct warrant denial of the exemption[,] . . . *federal law* provides no authority for bankruptcy courts to deny an exemption on a ground not specified in the Code."[6] *Id.* at 1196–97. In reaching such a conclusion, the Court acknowledged that its ruling "may produce inequitable results for trustees and creditors in other cases." *Id.* at 1198.

---

[6] While the Court appeared to temper the impact of its pronouncement by limiting its application it to federal exemptions only and leaving intact a bankruptcy court's discretion to consider a debtor's misconduct when dealing with state law exemption claims, at least one Court within this District has suggested that such a concession regarding the Court's authority to consider the intersection of state law exemptions and misconduct on the part of the debtor was "far less meaningful" in the First Circuit than at first blush. *Mateer*, 525 B.R. at 566 (holding that "[e]ven if Massachusetts law recognizes a court's equitable power to deny homestead protection to a debtor engaged in fraudulent conduct with respect [to] the homestead property, the United States Court of Appeals for the First Circuit in *Patriot Portfolio, LLC v. Weinstein (In re Weinstein)*, 164 F.3d 677 (1st Cir.[ ]1999), has instructed that such power is pre-empted by federal law in the event bankruptcy ensues. *Weinstein* appears to slam the door left minimally open by the Supreme Court in *Law v. Siegel*."). In the instant case, the Debtor is not seeking state law exemptions, so it is unnecessary for the Court to address this ostensible exception to the *Siegel* mandate.

9

Even if the Supreme Court's discourse on statutory construction related to exemptions is dicta not essential to its holding, if such dicta is carefully considered and clearly expressed, it must be followed. *See, e.g., Igartúa v. United States*, 626 F.3d 592, 605 n.15 (1st Cir. 2010) (holding "[c]arefully considered Supreme Court dicta, though not binding, 'must be accorded great weight and should be treated as authoritative.' Although the Supreme Court may ignore its own dicta, we are a lower court bound by the Supreme Court." (internal citations omitted)); *McCoy v. Mass. Inst. of Tech.*, 950 F.2d 13, 19 (1st Cir. 1991) (concluding that "federal appellate courts are bound by the Supreme Court's considered dicta almost as firmly as by the Court's outright holdings, particularly when, as here, a dictum is of recent vintage and not enfeebled by any subsequent statement. If lower courts felt free to limit Supreme Court opinions precisely to the facts of each case, then our system of jurisprudence would be in shambles, with litigants, lawyers, and legislatures left to grope aimlessly for some semblance of reliable guidance." (internal citations omitted)). In this instance, the *Siegel* dicta provides clear guidance concerning the limits of bankruptcy courts to use their § 105 powers to address debtor fraud in the exemption context and this guidance has been recognized by the United States Court of Appeals for the First Circuit. *See Ledee*, 772 F.3d at 29 n.10. Application of *Siegel*, therefore, requires this Court allow the Amendment Motion, as the Court is limited in its authority to deny the Debtor leave to amend his exemptions whether there was bad faith conduct or not.

The Trustee's reliance on Rule 4003(b)(2) does not change the result. Rule 4003(b)(2) provides "[t]he trustee may file an objection to a claim of exemption at any time prior to one year after the closing of the case if the debtor fraudulently asserted the claim of exemption." Fed. R. Bankr. P. 4003(b)(2). While the Debtor argues that the plain language of the rule dictates that a

case must be closed for a Trustee to invoke the rule, such an argument is unavailing and is rejected by this Court. In terms of timing, Rule 4003(b)(2) simply expands upon the strict thirty (30) day deadline for objecting to exemptions for trustees where fraud is involved. Ordinarily, parties must "file an objection to the list of property claimed as exempt only within 30 days after the meeting of creditors held under § 341(a) is concluded or within 30 days after any amendment to the list or supplemental schedules is filed, whichever is later," Fed. R. Bankr. P. 4003(b)(1), but Rule 4003(b)(2) creates a limited timing exception to this rule for trustees.

While the rule does not specifically define the term "fraudulently asserted," courts have concluded that to determine whether a debtor fraudulently asserted an exemption claim within the meaning of Rule 4003(b)(2) requires the court "apply the usual definition of fraud, except the damages requirement, which has no bearing on the question of exemptions." *Whatley v. Stijakovich-Santilli (In re Stijakovich-Santilli)*, 542 B.R. 245, 256 (B.A.P. 9th Cir. 2015). "As a general matter, the Code defines the creation, alteration or elimination of substantive rights . . . the Bankruptcy Rules [only] define the process by which these privileges may be effected." *In re Hanover Indus. Mach. Co.*, 61 B.R. 551, 552 (Bankr. E.D. Pa. 1986). Rules may not conflict with any substantive right created by the Bankruptcy Code itself. 28 U.S.C. § 2075.

The Trustee argues that, despite the pronouncement in *Siegel* and cases which have interpreted it, the application of Rule 4003(b)(2) provides an alternative, viable basis for denial of the Amendment Motion, citing *Woolner* and noting that neither *Siegel* nor *Mateer* addressed Rule 4003(b)(2). In *Woolner*, the court concluded that the comments in *Siegel* were dicta, and that Rule 4003(b)(2) provided authority for sustaining an objection to exemption "at any time prior to one year after the closing of the case if the debtor fraudulently asserted the claim of

11

exemption." *Woolner*, 2014 WL 7184042, at * 4; *but see, e.g., In re Bogan*, 534 B.R. 346, 349-50 (Bankr. W.D. Wis. 2015) (rejecting *Woolner's* argument that the rules can provide an independent basis for disallowing an exemption). The *Woolner* court chose not to apply the dicta in *Siegel* because policy considerations weighed toward continuing to deny bad faith amendments despite *Siegel*'s clear declaration regarding the contours of § 522. In disregarding *Siegel*, the Court granted a trustee's objection to the debtors' exemptions because the debtors intentionally undervalued assets in bad faith. Distinguishing *Siegel*, the court stated "in this Court's view, there is a material and decisive difference between the Bankruptcy Court (a) not having the authority to surcharge a previously allowed and unobjected-to exemption and (b) not having the authority to disallow the exemption in the first place because it was initially claimed fraudulently or in bad faith." *Woolner*, 2014 WL 7184042, at * 3.

The *Woolner* analysis, however, remains a decidedly minority view.[7] *See, e.g., Baker*, 791 F.3d at 682; *In re Castellano*, 550 B.R. 214, 216-17 (Bankr. E.D.N.Y. 2016) (finding that *Siegel* was dispositive in overruling exemption objection despite trustee's reliance on Fed. R. Bankr. P. 4003(b)(2)); *In re Liao*, 553 B.R. 584, 602 n.3 (Bankr. S.D. Tex. 2016) (finding that since *Woolner*, no other court has followed its rationale and that even the *Woolner* court would

---

[7] Even the *Woolner* court recognized the weight of authority was against it, stating that the "[d]ebtors have cited a number of cases that have applied the quoted language of *Siegel* to facts that are largely analogous to the facts of this case and have held or implied that Bankruptcy Courts lack the power to disallow exemptions on the grounds of the debtor's fraud or bad faith (though none of those cases have mentioned the indicated Rule or discussed its relevance or impact) . . . . By reason of the foregoing and with due regard and respect for my judicial colleagues, this Court declines to follow their lead." *Woolner*, 2014 WL 7184042, at *4 (internal citations omitted).

not be able to apply it in future cases because of the Sixth Circuit's subsequent precedent in *Baker*, 791 F.3d 677)); *In re Coyle*, No. 14–90026, 2016 WL 828459, at *3 n. 2 (Bankr. C.D. Ill. Mar. 2, 2016) (holding that "Fed. R. Bankr. P. 4003(b)(2) does not provide a substantive basis to deny a claim of exemption" and stating that the court did not believe "the reasoning of *Woolner* [was] persuasive in any respect"). In fact, the United States Court of Appeals for the Sixth Circuit, the *Woolner* court's circuit, determined that an objection based on bad faith or concealment of property can no longer be sustained absent specific statutory authorization and rejected the analysis in *Woolner* that *Siegel* was "mere dictum" that did not need to be followed, reiterating that "'[l]ower courts are obligated to follow Supreme Court dicta, particularly where there is not substantial reason for disregarding it, such as age or subsequent statements undermining its rationale' [and n]o such reason in favor of disregarding *Siegel* exists here." *Baker*, 791 F.3d at 682 (quoting *Am. Civil Liberties Union of Ky. v. McCreary Cty., Ky.*, 607 F.3d 439, 447–48 (6th Cir. 2010)). Post-*Siegel*, the Court is constrained to conclude that if bad faith or fraudulent conduct could preclude invocation of an exemption, Congress would have to amend § 522. *See Bogan*, 534 B.R. at 349; *see also, e.g.*, 11 U.S.C. § 522(g) (limiting a debtor's exemption rights in property recovered by a trustee in certain circumstances).

The Trustee is not asserting that the exemption claim itself was fictitious or that the claimed exemption was not legitimately available.[8] Further, the Trustee does not cite a post-

---

[8] The Court recognizes the exemption will be subject to adjustment based on the total amounts asserted on Schedule C. The statutory maximums in effect as of the Petition Date for the subsections under which the Debtor seeks to exempt the Claim were $22,975.00 under § 522(d)(11)(D) and $1,225.00 plus any unused (d)(1) amount up to $11,500.00 for § 522(d)(5), the so-called "wildcard" exemption. The Debtor has already claimed other items as exempt under the wildcard in the amount of $7,210.00, leaving only $5,515.00 available under that provision.

*Siegel* case, other than *Woolner*, as standing for the proposition that a debtor asserting an exemption by conduct that is generally fraudulent to his creditors is a basis to deny such an exemption under Rule 4003(b)(2).

Based upon the foregoing, after considering the Supreme Court's dicta in *Siegel*, this Court concludes that it lacks the authority to deny the Amendment Motion and the Debtor's effort to exempt his previously disclosed interest in the Claim based upon any bad conduct or intent in claiming the exemption when the settlement approval was pending.

Despite this conclusion, the Court observes that there remain additional avenues available to trustees and creditors to address fraudulently claimed exemptions, despite the prohibition of *Siegel* and the inapplicability of Rule 4003(b)(2) to legitimately claimed exemptions that nonetheless resulted from bad faith conduct. As recognized by the *Siegel* Court, a bankruptcy court's authority under Fed. Bankr. Rule 9011 to sanction a debtor and "further sanctioning authority under either § 105(a) or its inherent powers" may address improper conduct by a debtor. *Siegel*, 134 S. Ct. at 1198. Additionally, the Bankruptcy Code provides several remedies to trustees "including the denial of discharge under [§] 727(a)(1)[,] . . . dismissal of the case, or, if the fraud was in connection with the transfer of an asset, avoidance of the transfer and recovery of the asset." *In re Hurt*, 542 B.R. 798, 804 (Bankr. E.D. Tenn. 2015) (citing *In re Sumerell*, 194 B.R. 818, 839 (Bankr. E.D. Tenn. 1996)).

IV.    Conclusion

While it is hard to square *Siegel*'s conclusion with the frequently cited refrain underlying bankruptcy protection that it is the "honest, but unfortunate debtor" that may obtain the protections and benefits of filing, this Court is constrained by the Supreme Court's dicta on the

14

issue of exemption amendments and bad faith conduct. The Court having answered the threshold question of whether the Debtor may amend his exemptions despite allegations of bad faith in undervaluing the Claim, the Amendment Motion shall be granted. Given the Trustee's unwillingness to pursue the Settlement Motion under that circumstance, the Court does not have to reach the issue of the reasonableness of the proposed settlement and shall deny that motion without prejudice. A separate order shall enter in accordance with this decision.

Dated: July 17, 2017                                    By the Court,

                                                        _____
                                                        Christopher J. Panos
                                                        United States Bankruptcy Judge